UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SHELDON GAYLE,**

    **Petitioner,**

**v.**                  **Case No: 6:18-cv-1021-Orl-41GJK**

**SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,**

    **Respondents.**
_____/

## ORDER

THIS CAUSE is before the Court on Petitioner Sheldon Gayle's Petition for Writ of Habeas Corpus ("Petition," Doc. 1) filed by counsel pursuant to 28 U.S.C. § 2254. Respondents filed a Response to Petition ("Response," Doc. 6) in compliance with this Court's instructions. Petitioner filed a Reply to Response ("Reply," Doc. 10).

Petitioner asserts six grounds for relief. For the following reasons, the Petition will be denied.

### I.   Procedural History

A grand jury charged Petitioner with first degree murder (Count One), unauthorized possession or use of a driver's license (Count Two), and resisting an officer without violence (Count Three). (Doc. 7-1 at 30-31). A jury found Petitioner guilty of Counts Two and Three but was unable to reach a verdict as to Count One. (Doc. 7-2 at 51-53). The state court declared a mistrial as to Count One. (*Id.* at 54). During jury selection in the second trial, Petitioner entered a plea of guilty to the lesser offense of second-degree murder pursuant to a plea agreement. (Doc. Nos. 7 at 113-29; 7-2 at 114-16). The trial court sentenced Petitioner to a 260.4 month term of

imprisonment as to Count One, a three year of imprisonment as to Count Two, and 827 days of imprisonment as to Count Three with all sentences to run concurrently. (Doc. Nos. 7-1 at 12; 7-2 at 88-89). Petitioner appealed, and the Fifth District Court of Appeal of Florida ("Fifth DCA") affirmed *per curiam*. (Doc. 7-4 at 184).

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (Doc. 7-6 at 25-45). The state court conducted an evidentiary hearing and denied the motion. (Doc. 7-8 at 109-15). Petitioner appealed, and the Fifth DCA affirmed *per curiam*. (Doc. 7-9 at 120).

## II. LEGAL STANDARDS

### A. Standard Of Review Under The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the Antiterrorism Effective Death Penalty Act, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. Standard For Ineffective Assistance Of Counsel

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. The prejudice requirement of the *Strickland*

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination;

inquiry is modified when the claim is a challenge to a guilty plea based on ineffective assistance. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To satisfy the prejudice requirement in such claims, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. ANALYSIS

#### A. Ground One

Petitioner asserts counsel rendered ineffective assistance by improperly advising him to reject the State's prior plea offers.[2] (Doc. 1 at 4-5). Petitioner notes that there were three prior plea

---

rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

[2] The Court notes that defense counsel Todd Deratany testified at the Rule 3.850 evidentiary hearing that he was disbarred after he represented Petitioner. (Doc. 7-5 at 4). There is no indication in the record that counsel's disbarment stemmed from his representation of Petitioner.

offers, consisting of (1) a plea straight up to manslaughter, (2) a plea of guilty to second-degree murder in exchange for a maximum fifteen-year sentence, and (3) a plea of guilty to second-degree murder in exchange for a twelve-year maximum sentence. (*Id*.). Petitioner maintains that counsel urged him to reject two of the offers because counsel believed he could win at trial. (*Id.*) Petitioner further notes that the day after he rejected the twelve-year plea offer, counsel told him that he did not think Petitioner would be sentenced to more than twelve years if he accepted the plea that was subsequently entered. (*Id*.). Petitioner also notes that counsel admitted at the evidentiary hearing that he did not convey the manslaughter plea offer to him, which deprived Petitioner of the ability to accept or reject that offer. (Doc. 10 at 9-10).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief. (Doc. 7-8 at 110-11). The state court reasoned that counsel's inability to "provide perfect advice about the wisdom of accepting a plea offer" did not establish ineffective assistance and the State could have rescinded the plea offers even if Petitioner had accepted one of the earlier offers. (*Id*.).

The right to effective assistance of counsel extends to plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused" and is deficient for failing to do so. *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Furthermore, "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id*. at 168. The two-part test enunciated in *Strickland* applies to claims that counsel was ineffective during plea negotiations. *Id*. at 163 (applying *Strickland*'s two-part test to petitioner's claim that counsel was ineffective for advising him to reject a plea offer). "Trials are difficult to predict, and advising a criminal defendant whether to accept or reject a plea offer can be a tricky proposition." *United States v. Martini*, 31 F.3d 781, 782 n.1 (9th Cir. 1994). To prevail

under *Strickland,* "the advice would have to fall outside a 'wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland,* 466 U.S. at 689). "'[W]ithout evidence that [counsel] gave incorrect advice or evidence that he failed to give material advice, [a defendant] cannot establish that his lawyer's performance was deficient.'" *Mostowicz v. United States*, 625 F. App'x 489, 494 (11th Cir. 2015) (quoting *Burt v. Titlow*, 571 U.S. 12, 17 (2013)).

To demonstrate prejudice where a plea offer has lapsed or been rejected because of deficient performance,

> defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Frye*, 566 U.S. at 147.

With respect to counsel's advice regarding the two conveyed plea offers, Petitioner has not established that counsel provided deficient performance.[3] Counsel did not give Petitioner erroneous legal advice regarding the penalties he faced if he proceeded to trial, the penalties he would have faced had he accepted a plea offer, or the analysis of the State's case against him. Instead, counsel assessed the State's evidence, opined that he believed Petitioner would win if he proceeded to trial, and thought Petitioner would only receive a twelve-year maximum sentence if he did not prevail at trial. Although counsel thought it was likely Petitioner would receive a maximum sentence of twelve years, trial counsel was permitted to give his opinion about the

---

[3] The Court notes that counsel testified at the evidentiary hearing that the twelve-year offer was quickly withdrawn by the State. (Doc. 7-5 at 9).

strength of the State's evidence and the possible sentence. Counsel's assessment of the strength of the State's case and advice to Petitioner were objectively reasonable given that the jury did not convict Petitioner at his first trial and at least one of the State's key witnesses intended to recant his testimony against Petitioner at the second trial. "Trial counsel was not constitutionally defective because he lacked a crystal ball." *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002).

Regarding counsel's failure to convey the manslaughter offer, Petitioner has not established that prejudice resulted. As noted by Petitioner, the manslaughter plea offer was the first plea offer and would have subjected Petitioner to a maximum fifteen-year sentence. (Doc. 10 at 9). The State offered this plea to Petitioner during the course of his second trial. (Doc. 7-2 at 180-84). At that time, counsel told the trial court that he had not conveyed the offer to Petitioner. Consequently, the trial court advised Petitioner of the offer and ensured he was aware of it. (*Id.*). Petitioner advised the court that he understood the offer and indicated he did not want to accept it. (*Id.* at 184-85). Petitioner subsequently rejected a twelve-year plea offer. Petitioner, therefore, has not shown that a reasonable probability exists that he would have accepted the manslaughter plea offer had counsel conveyed it to him. Accordingly, Ground One will be denied.

### B. Ground Two

Petitioner maintains counsel rendered ineffective assistance by misinforming him of the sentence he would receive by entering the plea. (Doc. 1 at 7). According to Petitioner, counsel advised him that he would receive a sentence of seven years if he entered the plea and that he could withdraw his plea within thirty days if he wanted to proceed to trial. (*Id.*).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief but did not address Petitioner's allegation concerning counsel's advice on withdrawing the plea. (Doc. 7-8 at 111-12). In denying the portion of the claim concerning counsel's advice about the sentence

Petitioner would receive, the state court determined that the record established that Petitioner knew he could be sentenced to a maximum term of 265.5 months in prison if he entered the plea and that no promises had been made regarding the sentence. (*Id*. at 112).

At the plea hearing, Petitioner affirmed that he understood that the maximum sentence he could receive under the plea agreement was a 265.5 month term of imprisonment. (Doc. 7 at 115). The trial judge explained that he had discretion to determine the sentence to be imposed, and Petitioner affirmed that no one had promised him he would receive less than 265.5 months. (*Id.* at 117, 120). Petitioner's representations constitute "a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Consequently, the state court's denial of this portion of the claim is not contrary to, or an unreasonable determination of, clearly established federal law.

Furthermore, pursuant to Florida law, "'[t]he court may in its discretion, and shall on good cause,' permit a no contest or guilty plea to be withdrawn at any time prior to sentencing." *Crane v. State*, 69 So. 3d 357, 359 (Fla. 2d DCA 2011) (quoting Fl. R. Crim. P. 3.170(f)). "Good cause 'has been found to exist when the defendant's plea was 'infected by misapprehension, undue persuasion, ignorance, or was entered by one not competent to know its consequence or that it was otherwise involuntary, or that the ends of justice would be served by withdrawal of such plea.'" *Id.* (quoting *Lehmkuhle v. State*, 20 So.3d 971, 973 (Fla. 2d DCA 2009). Consequently, Petitioner could have moved to withdraw his plea after he pleaded guilty, and in fact did so, and such a motion would have been granted in the trial court's discretion if good cause existed to withdraw the plea. Assuming counsel advised Petitioner that he could withdraw his plea, therefore, this advice was not entirely erroneous.

More importantly, Petitioner has not demonstrated that prejudice resulted from counsel's purported advice. Petitioner knew that he was facing a mandatory sentence of life in prison if convicted as charged at trial and a minimum sentence of twenty-five years if convicted of committing a lesser included offense with a firearm. (Doc. 7 at 113-15). Petitioner understood he was giving up his right to proceed to trial by entering the plea, and he affirmed that no one had promised him anything that was not in the plea agreement to enter the plea. (*Id*. at 119-20). Given that Petitioner was subject to a mandatory term of life in prison if convicted at trial as charged and his affirmation that there was nothing promised to induce him to enter the plea, a reasonable probability does not exist that Petitioner would have proceeded to trial but for counsel's purported erroneous advice. Accordingly, Ground Two will be denied.

**C.     Ground Three**

Petitioner asserts counsel rendered ineffective assistance by moving to disqualify the judge. (Doc. 1 at 9-10). In support of this ground, Petitioner argues that he was prejudiced when the trial judge recused himself, on the defense's motion, prior to ruling on Petitioner's motion to withdraw the plea and prior to sentencing. (*Id*. at 10).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief. (Doc. 7-8 at 112). The state court reasoned that defendants have no right to any particular judge to hear their case. (*Id*.).

The state court's denial of this ground is not contrary to, or an unreasonable application of, federal law. After Petitioner entered his plea, defense counsel learned that the judge was acquainted with the owner of the boxing club where the victim trained and knew of the victim's status as a star boxer. (Doc. 7-4 at 97-99). Defense counsel moved to disqualify the trial judge on this basis. (*Id*.). Along with the motion, counsel filed Petitioner's affidavit in which Petitioner attested that

he believed the judge "does or may have a prejudice or bias adverse to my interests in this matter. . . [and] fear . . . that I will not receive a fair hearing at sentencing on June 8, 2010." (*Id*. at 101-02).

From the record, defense counsel had a legal basis to move to disqualify the judge. Furthermore, based on Petitioner's sworn statement, at the time counsel filed the motion, Petitioner was concerned that he would not receive a fair sentencing hearing unless the judge recused himself. Consequently, a reasonable attorney could have determined that moving for the judge's recusal was warranted. Moreover, Petitioner has not demonstrated that a reasonable probability exists that the outcome of the proceeding would have been different had counsel not moved for the trial judge to withdraw. It is purely speculative that but for the judge's withdrawal, Petitioner would have received a lesser sentence or that his motion to withdraw his guilty plea would have been granted. Accordingly, Ground Three will be denied.

### D. Ground Four

Petitioner asserts counsel rendered ineffective assistance by improperly advising him regarding the availability and testimony of a key State witness. (Doc. 1 at 12). According to Petitioner, counsel erroneously told him that Rodney Thorpe ("Thorpe"), the sole eyewitness to the shooting, had been arrested, was in jail, and was available to testify as a State witness and that Thorpe's testimony would result in a guilty verdict and life sentence. (*Id*. at 13). Petitioner maintains that Thorpe was not in custody and, unbeknownst to Petitioner, Thorpe had notified the trial judge that he had lied during the first trial. (*Id*.).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief after an evidentiary hearing. (Doc. 7-8 at 113-14). The state court found defense counsel's testimony

that he was aware that Thorpe had recanted his trial testimony and discussed the matter with Petitioner prior to the entry of the plea to be credible. (*Id*. at 113).

At the evidentiary hearing, defense counsel testified that he told Petitioner in advance of his second trial about Thorpe's letter in which Thorpe recanted his trial testimony. (Doc.7-5 at 14, 24). Defense counsel adamantly maintained that Petitioner knew about Thorpe's recantation prior to entering the plea. (*Id.* at 16). Defense counsel further testified that he knew Thorpe was not in jail at the time of the second trial, and counsel denied telling Petitioner that Thorpe was in jail before Petitioner entered the plea. (*Id*. at 12). Defense counsel also denied telling Petitioner that he would receive a life sentence if Thorpe testified. (*Id*. at 13).

The state court made a factual determination that counsel's testimony was credible. "Credibility determinations are factual findings and therefore 'are presumed to be correct absent clear and convincing evidence to the contrary.'" *Guerra v. Sec'y, Dep't of Corr.*, 271 F. App'x 870, 871 (11th Cir. 2008) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Although Petitioner testified that he did not know about Thorpe's recantation until after he entered the plea, Petitioner has not demonstrated by clear and convincing evidence that the state court's factual determination is incorrect. Consequently, Petitioner has not demonstrated that counsel was deficient or that a reasonable probability exists that Petitioner would not have entered the plea but for counsel's purported advice. Accordingly, Ground Four will be denied pursuant to § 2254(d).

**E.     Ground Five**

Petitioner contends counsel rendered ineffective assistance by failing to investigate a witness and subpoena a material witness for trial. (Doc. 1 at 15). According to Petitioner, counsel failed to investigate prior to the entry of the plea to determine what testimony Nashida Gayle

("Gayle") would give.[4] (*Id.*). Petitioner further complains that counsel failed to subpoena Ken Taylor ("Taylor") for trial.[5] (*Id.*). Petitioner maintains that counsel's failure to investigate and call these witnesses induced him to enter the plea. (*Id.*).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief. (Doc. 7-8 at 114-15). The state court noted that Petitioner was aware of Gayle's purported recantation when he entered his plea and that Taylor testified at the first trial that he did not see who fired the gun.[6] (*Id.* at 115).

Petitioner has not established that the state court's denial of this ground is contrary to, or an unreasonable application of, clearly established federal law. Petitioner has not explained exactly what testimony Gayle would have provided at trial other than that she would have recanted her earlier testimony. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted)).

---

[4] Gayle, Petitioner's wife, testified at the first trial. (Doc. 7-8 at 114). Petitioner maintains Gayle recanted her trial testimony and would have told defense counsel that the state attorney and the victim's friends and family threatened her into testifying against Petitioner. (Doc. 1 at 15).

[5] In his police interview, Taylor could not identify the shooter from a photo line-up containing Petitioner's photo and told police that he did not see the perpetrator shoot the victim and did not see a weapon. (Doc. 2-3 at 45-65). Taylor indicated, however, that he believed the person who was at Gayle's apartment and was arguing with the victim prior to the shooting was Gayle's husband. (*Id.* at 65).

[6] Petitioner maintains that the state court incorrectly found that Taylor testified at the first trial. (Doc. 10 at 20). It is not clear from the record before the Court whether Taylor testified at the first trial. Even assuming, however, that the state court's finding on this matter is erroneous, Petitioner has not demonstrated he is entitled to relief on this ground for the reasons stated *infra*.

Furthermore, at the evidentiary hearing, defense counsel testified during a proffer that he had spoken to Gayle prior to the second trial date. (Doc. 7-5 at 16, 40). Defense counsel said that he knew Gayle was available to testify for the defense. (*Id*. at 16). Defense counsel also indicated that Taylor used a false name when he gave his statement to police and neither the State nor the defense was able to locate him.[7] (*Id.*). Consequently, it appears that defense counsel in fact investigated these witnesses and attempted to locate Taylor but was unable to do so.

More importantly, there is no indication that Petitioner was unaware at the time he entered his plea of Gayle and Taylor's purported testimony. Nevertheless, at the plea hearing, Petitioner affirmed that he understood that by entering the plea he was giving up the right to call and subpoena witnesses to testify for him and to present a defense to the offense. (Doc. 7 at 119-20). Petitioner further affirmed that he was satisfied with his attorney and never complained that counsel failed to investigate or subpoena any witnesses. *See id.* at 113. Petitioner has not demonstrated that a reasonable probability exists that he would not have entered the plea but for counsel's failure to investigate these witnesses or subpoena Taylor. Accordingly, Ground Five will be denied.

**F.     Ground Six**

Petitioner asserts that the cumulative effect of counsel's deficiencies resulted in prejudice. (Doc. 1 at 17). Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief because it found there was no merit to any Petitioner's grounds for relief. (Doc. 7-8 at 115).

"The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 564 (11th Cir. 2009). The Supreme Court has held, however, in relation to a

---

[7] Petitioner notes that an individual named Ken Taylor was interviewed by police. (Doc.10 at 21).

claim of ineffective assistance of counsel, that "'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* (quoting *United States v. Cronic,* 466 U.S. 648, 659 n. 26 (1984)).

Petitioner has not demonstrated that counsel rendered ineffective assistance in any of his grounds. Consequently, Petitioner's claim of cumulative error fails. *See, e.g.*, *Borden v. Allen,* 646 F.3d 785, 823 (11th Cir. 2011) ("Because Borden has not sufficiently pled facts that would establish prejudice—cumulative or otherwise—we decline to elaborate further on [a cumulative-effect ineffective assistance of counsel claim] for fear of issuing an advisory opinion on a hypothetical issue."). Accordingly, Ground Six will be denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner demonstrates "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934.

However, a prisoner need not show that the appeal will succeed. *Miller-El*, 537 U.S. at 337.

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

Accordingly, it is hereby **ORDERED** and **ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.
2. Petitioner is **DENIED** a Certificate of Appealability.
3. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on September 6, 2019.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record